US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

# UNITED STATES DISTRICT COURT

MAY 27 2022

for the
Western District of Arkansas
Fayetteville Division

JAMIE GIANI, Clerk

By

Deputy Clerk

In the Matter of the Search of )
SUBJECT ITEMS seized at 1636 Par Ln. )
Apt 106, Springdale, AR 72762, currently ) Case No. 5:22 cm 00021
being held at the HSI Office in Fayetteville, )
Arkansas )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*: **SUBJECT ITEMS seized at 1636 Par Ln., Apt 106, Springdale, AR 72762, currently being held at the HSI Office in Fayetteville, Arkansas, more particularly described on "Attachment A".**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: **See "Attachment B"**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

■ evidence of a crime;

■ contraband, fruits of crime, or other items illegally possessed;

■ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(2)(B) | Receipt of Child Pornography |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography |
| 18 U.S.C. § 1470 | Attempted Transfer of Obscene Material to a Minor |
| 18 U.S.C. § 2251(a) and (e) | Production of Child Pornography |

The application is based on these facts: **See Affidavit of HSI Task Force Officer Tommy Wooten**

■ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Tommy Wooten, HSI Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 27, 2022

*Judge's signature*

City and state: Fayetteville, Arkansas

Christy Comstock, United States Magistrate Judge
*Printed name and title*

## Affidavit in Support of Application for Search Warrant

I, Thomas Wooten, a Task Force Officer with Homeland Security Investigations (HSI), being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      Since June of 2000, I have been a police officer and Detective with the Springdale, Arkansas Police Department.  As such, I am authorized by the State of Arkansas to apply for and execute search warrants, arrest warrants and other instruments of the court.  As a law enforcement officer, I have received specialized training in matters related to criminal investigation, specifically but not limited to the area of sexual exploitation of minors, drug distribution, and money laundering. Since August of 2017, I have been assigned as a Task Force Officer to Homeland Security Investigations (HSI), a component of the U.S. Department of Homeland Security.  As a Task Force Officer (TFO) with HSI, I primarily investigate crimes related to the sexual exploitation of minors. Prior to joining HSI, I attended a 40-hour training session covering Title 8, Title 18, Title 19 and Title 21 of the United States Code.  As such, I am a law enforcement officer within the meaning of Section 115(c)(1) of Title 18 United States Code, who is authorized by law or Government agency to engage in or supervise the prevention, detection, investigation and/or prosecution of any violation of Federal and State criminal law.

2.      This affidavit is being submitted in support of an application for a search warrant for the purpose of searching seized electronic digital devices to include: cellular smart phones with contained external storage cards, digital smart tablets, video gaming systems, computers with internal storage drives, external storage mediums such as thumb drives and memory cards and digital video disks (DVD'S) which were seized by Detectives with the Springdale Police Department pursuant to a State of Arkansas Circuit Court search warrant on April 22, 2022 at 1636 Par Lane, Apartment

#106, within the City limits of Springdale, Arkansas 72762. The following devices were seized

pursuant to the warrant and require digital forensic processing:

001 – One (1) Gray Dell Latitude 5420 Laptop, S/N-GYF7BC3
002 – One (1) Black Samsung Cell Phone
003 – One (1) Black Nintendo Switch, S/N-XAW10089917656
004 – One (1) Sandisk SD Flash Memory Card
005- One (1) Flash Memory Stick Unknown Brand
006- One (1) Seagate External HardDrive 2TB, S/N-NA9KLZC7
007- One (1) Sony Playstation 5, S/N-AJ42786916
008- One (1) Sandisk Micro SD card with adapter
009- One (1) Samsung Hardrive, S/N-S34RJ9FFA70793
010- One (1) Kingston USB Flash Memory Drive
011- One (1) Nintendo DS W/Charger & Micro SD
012- One (1) Asus X540L Laptop, S/N-G3N0CX10T99912A
013- One (1) Amazon Tablet, Model-SL056ZE
014- One (1) Gaomon (Digital Art Tablet), S/N-8CDC3SG01882
015- One (1) Sony Playstation 4
016- One (1) Red iPhone W/Black and Green case, IMEI: 35687211412842
017- One (1) Binder with assorted DVD'S for review
018- One (1) Samsung Galaxy Note 9, IMEI: 356569090277157 (Seized by Springdale detectives on April 15, 2022, following the suspect's criminal interview and arrest for Rape and Sexual Assault 4th Degree).

also referred to as "**SUBJECT ITEMS**". As such, it does not include all of the information

known to me as part of this investigation, but only information sufficient to establish probable cause

for the requested search warrant.

## STATUTORY AUTHORITY

3. This investigation concerns alleged violations of Title 18, United States Code, Section

2252A(a)(2)(B), Receipt of Child Pornography, Title 18, United States Code, Section

2252A(a)(5)(B), Possession of Child Pornography, Title 18 United States Code, Section 1470,

Attempted Transfer of Obscene Material to a Minor and Title 18, United States Code, Section 2251(a)

and (e), Sexual Exploitation of a Minor Via the Production of Child Pornography.

a) Title 18 United States Code, Section2252A(a)(2)(B) prohibits a person from

knowingly receiving or distributing any material that contains child pornography

using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

b) Title 18, United States Code, Section 2252A(a)(5)(B) prohibits a person from knowingly possessing or knowingly accessing with intent to view, any book, magazine, periodical, film, video-tape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

c) Title 18, United States Code, Section 1470 prohibits a person from knowingly using a facility or means of interstate commerce to transfer obscene material to a minor who has not attained the age of 16 or attempt to do such.

d) Title 18, United States Code, Section 2251(a) prohibits a person from using any means or facility of interstate and foreign commerce, to entice, use, persuade. . . a person that has not obtained the age of 18 years to engage in sexually explicit conduct for the purpose of creating a visual depiction of such conduct.

e) The term "minor," as defined in Title 18, United States Code, Section 2256(1), refers to any person under the age of eighteen years.

f) The term "sexually explicit conduct," Title 18, United States Code, Sections2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between

persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

g) The term "visual depiction," as defined in Title 18, United States Code, Section2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

h) The term "computer," as defined in Title 18 United States Code, Section 1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

i) The term "child pornography," as defined in Title 18, United States Code, Section 2256(8), means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where (a) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (b) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (c) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

4.      On April 15, 2022, a fourteen (14) year old Minor Victim (hereinafter referred to as MV1) reported to her school counselor that she had been sexually abused by her uncle for approximately two (2) years.  A report was then made to the State of Arkansas child abuse hotline and also reported to the School Resource Officer (SRO), Mike Hignite. MV1 reported the last sexual incident took place approximately a few days ago.  SRO Hignite notified Springdale Detective Chad Wilson and he arranged for MV1 to be interviewed at the Springdale Children's Safety Center on this same day.

5.      On April 15, 2022, MV1 was interviewed by child forensic interviewer Debbee Deckard. MV1 disclosed that her uncle, PEARSON PATRICK (hereinafter identified as PATRICK), whom she called "Grandpa," was the person she was referring to having a sexual relationship with. PATRICK is not a blood relative to MV1, but in the Marshallese culture he was considered as an uncle.  MV1 stated she was around thirteen (13) years old when she had her first sexual encounter with PATRICK.  MV1 disclosed that she had performed oral sex on PATRICK multiple times; she also spoke about masturbating PATRICK and gave up and down hand motions as she talked about it.  MV1 said that PATRICK rubbed his penis on her butt, both inside and outside of her clothing. MV1 also disclosed that PATRICK groped her breasts, and rubbed her butt and vagina on this inside and outside of her clothing.  MV1 disclosed that PATRICK sent pictures of his penis through text messages to her.

6.      On April 15, 2022, following the interview with MV1, Detective Wilson found PATRICK at an apartment complex in Springdale.  Detective Wilson asked PATRICK if he would be willing to come down to the police department and speak with him in reference to a report. PATRICK agreed and followed Detective Wilson to the Springdale Police Department for questioning.  Detective WILSON advised PATRICK of his *Miranda* rights and he agreed to speak

with investigators without an attorney. PATRICK told Detective Wilson that he knew why he was there and commented, "Things got too far." PATRICK said the relationship was not a sexual one, but it was "more than it should have been with a minor." Detective Wilson asked Pearson to explain what he meant by "relationship" and he stated they were "boyfriend and girlfriend." PATRICK subsequently admitted to touching MV1 on her breasts, butt and vagina; both on top of and underneath her clothing. PATRICK stated that it never went as far as intercourse and he believed she was a virgin. Detective Wilson asked Pearson when the last time he and MV1 had any sexual relations; PATRICK stated they both sleep in the living room, implying every night, and he touches her during that time. PATRICK stated all the touching and other incidents began when he moved to Arkansas during 2019. PATRICK further admitted to sending nude photographs of himself via text messages to MV1. PATRICK admitted to asking MV1 for nude photographs and receiving nude photographs of her. PATRICK said he used the nude photographs of MV1 to masturbate with. PATRICK told Detective Wilson that those pictures were on his cellular phone that was currently in his possession. The cellular phone was identified as a Samsung Galaxy, Note 9, with IMEI number 356569090277157. The cellular phone was confiscated from PATRICK and he was provided with a receipt for evidence (Springdale Police CID Form 7). PATRICK was subsequently arrested on state charges for Rape and Sexual Assault 4th Degree.

7.     On April 21, 2022, Detective Wilson applied for and obtained a state search warrant for the seized Samsung Note 9 cellular phone. The search warrant was presented to and authorized by State District Court Judge, Jeff Harper. Springdale Detective Robert Nelson conducted a search of the Samsung Note 9 using Cellebrite UFED4PC and a report was generated with the Cellebrite Reader software. Detective Wilson reviewed the evidence obtained from the digital extraction and observed numerous images and videos depicting Child Sexual Abuse Material (CSAM) that appeared

to have been saved from various websites on the internet. Detective Wilson subsequently reached out to Homeland Security Investigations (HSI), Fayetteville, Arkansas and spoke with Your Affiant about the CSAM content found on the phone. Your Affiant viewed the pictures that were extracted from PATRICK'S phone and observed numerous CSAM files as described by Detective Wilson. Detective Wilson also identified hidden camera photographs depicting MV1 and her older sister in various stages of undress. Detective Wilson stated these pictures appeared to have been taken in the bathroom located within the apartment where PATRICK was living. The following information is a depiction of three (3) representative CSAM images that were viewed from the extraction:

    A) Filename: 1d148d7d5f4f2c462ab07fff2a9606b7.0
    Filepath: Samsung GSM_SM-N960U1 Galaxy Note
    9.zip/sdcard/Android/data/com.samsung.android.video/.cache/1d148d7d5f4f2c462ab07fff2a9606b7.0
    Modified date/time: 11/13/2021 3:02:15 AM(UTC-6)
    Description: This picture depicts a completely nude prepubescent white female between the ages of eight (8) to ten (10) years old. The child is holding a toothbrush which is partially inserted in her vagina.

    B) Filename: 197b198da16758522e09b6059c467e5a.0
    Filepath: Samsung GSM_SM-N960U1 Galaxy Note
    9.zip/sdcard/Android/data/com.samsung.android.video/.cache/197b198da16758522e09b6059c467e5a.0
    Modified Date/Time: 10/29/2021 4:17:53 AM(UTC-5)
    Description: This picture depicts a completely nude prepubescent white female between the ages of six (6) to eight (8) years old laying on a bed. The child's legs are spread apart and the focus of the camera is on her exposed vagina and anus.

    C) Filename: 49871.jpg
    Filepath: Samsung GSM_SM-N960U1 Galaxy Note 9.zip/sdcard/Movies/.thumbnails/49871.jpg
    Modified Date/Time: 12/4/2021 12:14:12 AM(UTC-6)
    Description: This picture depicts a prepubescent white female between the ages of eight (8) to ten (10) years old. The child is nude from the waist down with her legs spread apart and lifted into the air. The child is holding what appears to be a pen or pencil and has it pressed against her exposed vagina.

8.    As a result of the search warrant that was executed on the Samsung Note 9 cellular phone, Detective Wilson applied for and obtained a state search warrant for PATRICK'S residence, located at 1636 Par Ln., Apartment 106, Springdale, AR 72762. The search warrant was presented

to and authorized by Washington County Circuit Court Judge, John Threet on April 22, 2022. Detective Wilson and other members of the Springdale Police Department executed the search warrant on the same day. As a result of the residential search warrant, numerous SUBJECT ITEMS were seized as evidence and a receipt for the evidence taken was left inside the apartment along with a copy of the search warrant.

9.     Based on the interview with MV1 and the confession of PATRICK receiving nude images of MV1, it is believed that these photographs could be stored on multiple electronic devices; most likely within the SUBJECT ITEMS seized from his residence. Your Affiant also believes the seized SUBJECT ITEMS could contain further evidence of MV1 and her older sister due to the hidden bathroom camera photographs found on his cellular phone. Your Affiant is requesting to search the SUBJECT ITEMS listed to include the Samsung Note 9 that was originally processed by Springdale detectives due to the device not being checked for an internal micro-SD storage card.

## TECHNICAL BACKGROUND

10.     Based on my training, knowledge and experience, your Affiant is aware that individuals who commit online sexual exploitation offenses involving minors will often collect and/or view child pornography on their computer, and digital media storage devices, for several reasons:

    a.  They may receive sexual gratification and satisfaction, and/or fantasize about sexual contact with minors by viewing minors engaged in sexual activity or sexually suggestive poses;

    b.  They may collect sexually explicit or suggestive materials in a variety of media for their own sexual arousal and gratification;

c. They almost always possess and maintain their material in the privacy and security of their home or some other secure location. Child pornography distributors/collectors typically retain recordings, mailing lists, child erotica and store their child pornography amongst other, otherwise legal media or files. Digital evidence, like child pornography contraband, is different than traditional evidence that can be concealed, sold, used and/or destroyed and is not as volatile as other illegal items like narcotics; and

d. Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by to enable the owner to view the collection, which is valued highly.

e. They also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f. They generally prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

g. Increasingly, individuals who produce, distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes, use mobile computing devices

to do so. These portable devices can connect to the Internet at an individual's residence, or also through routers and wireless routers in various public and private locations. Mobile computing devices and electronic storage media such as laptops, tablets, smart phones, and flash drives, often travel with the person utilizing them and are commonly found in residences during search warrants.

11.     Your Affiant knows computers serve four basic functions in connection with child pornography: production, communication, distribution and storage. Photographs and other digital images must be stored as data on a computer or other digital media device using specialized software to transfer images from a digital camera to a computer, or other electronic storage device, or by transferring images saved onto a media card to a computer or electronic storage device.

12.     Your Affiant knows that if a child pornography viewer chooses to upgrade their electronic storage device, it is a simple process to transfer images from one device to another device. After the photograph or other image has been transferred onto the computer, the computer stores the data from the image as an individual "file." Such a file is generally known as a "GIF" (Graphic Interchange Format) or "JPEG" (for the Joint Photographic Experts Group, which wrote the standard file, recognizable by the ".gif" or ".jpg" file extensions (hereinafter referred to as an "image file.)) Computers are capable of rendering the digital image on a computer screen, transferring the image to another computer, and/or printing the image.

13.     Your Affiant knows that computer hardware, other digital devices, software, and electronic files are important to a criminal investigation in two distinct ways: the objects themselves may be contraband, evidence, instrumentalities, or fruits of a crime; and/or the objects may be used as storage devices that contain contraband, evidence, instrumentalities, or fruits of crime in the form of electronic data.

14.     The computer's capability to store images in digital form makes it an ideal repository for child pornography. The size of electronic storage media (commonly referred to as a "hard drive") used on the home computers has grown tremendously within the last several years. Hard drives with the capacity of 160 gigabytes are not uncommon. These drives can store thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

15.     Your Affiant knows from training and experience that computer systems commonly consist of computer processing units (CPU's) hard disks, hard disk drives, display screens, keyboards, printers, modems (used to communicate with other computers), electronic cables, USB flash drives, and other forms of magnetic and optical media containing computer information.

16.     Your Affiant knows from training and experience that computers and magnetic and optical media are used to store information. In addition to the above-mentioned image files, that information often includes data files or other persons engaged in similar activities with minors, and lists of other exploited minors, as well as records of correspondence and conversations (printed or electronic) with such persons.

17.     In addition to being evidence of a crime, there is probable cause to believe that the computers and their storage devices, the monitor, keyboard, printer, modem and other system components were used as a means of committing offenses involving the sexual exploitation of minors in violation of law. Accordingly, permission is sought herein to search computers and related devices consistent with the scope of the requested search.

18.      In addition to offenders who collect and store child pornography, law enforcement has encountered offenders who obtain child pornography from the Internet, view the contents and subsequently delete the contraband, often after engaging in self-gratification. In light of technological advancements, increasing Internet speeds and worldwide availability of child sexual exploitative material, this phenomenon offers the offender a sense of decreasing risk of being identified and/or apprehended with quantities of contraband. This type of consumer is commonly referred to as a 'seek and delete' offender, knowing that the same or different contraband satisfying their interests remain easily discoverable and accessible online for future viewing and self-gratification. Your Affiant knows that, regardless of whether a person discards or collects child pornography he/she accesses for purposes of viewing and sexual gratification, evidence of such activity is likely to be found on computers and related digital devices, including storage media, used by the person. This evidence may include the files themselves, logs of accounts, access events, contact lists of others engaged in trafficking of child pornography, backup files, and other electronic artifacts that may be forensically recoverable.

19.      Based on my training and experience, and that of computer forensic agents that your Affiant works and collaborates with on a daily basis, your Affiant knows that every type and kind of information, data, record, sound or image can exist and be present as electronically stored information on any of a variety of computers, computer systems, digital devices, and other electronic storage media. Your Affiant also knows that electronic evidence can be moved easily from one digital device to another. As a result, your Affiant believes that electronic evidence may be stored on any of the digital devices seized.

20.      Based on your Affiant's training and experience, and your Affiant's consultation with computer forensic agents who are familiar with searches of computers, you Affiant knows that

in some cases the items set forth in Attachment B may take the form of files, documents, and other data that is user-generated and found on a digital device. In other cases, these items may take the form of other types of data - including in some cases data generated automatically by the devices themselves.

21.     Based on your Affiant's training and experience, and your Affiant's consultation with computer forensic agents who are familiar with searches of computers, I believe there is probable cause to believe that the items set forth in Attachment B will be stored in those digital devices for a number of reasons, including but not limited to the following:

    a.   Once created, electronically stored information (ESI) can be stored for years in very little space and at little or no cost. A great deal of ESI is created, and stored, moreover, even without a conscious act on the part of the device operator. For example, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache," without the knowledge of the device user. The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages or if a user takes affirmative steps to delete them. This ESI may include relevant and significant evidence regarding criminal activities, but also, and just as importantly, may include evidence of the identity of the device user, and when and how the device was used. Most often, some affirmative action is necessary to delete ESI. And even when such action has been deliberately taken, ESI can often be recovered, months or even years later, using forensic tools.

    b.   Wholly apart from data created directly (or indirectly) by user-generated files, digital devices - in particular, a computer's internal hard drive - contain electronic evidence

of how a digital device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating systems or application operations, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible for a user to use such specialized software to delete this type of information - and, the use of such special software may itself result in ESI that is relevant to the criminal investigation. In particular, to properly retrieve and analyze electronically stored (computer) data, and to ensure accuracy and completeness of such data and to prevent loss of the data either from accidental or programmed destruction, it is necessary to conduct a forensic examination of the computers. To effect such accuracy and completeness, it may also be necessary to analyze not only data storage devices, but also peripheral devices which may be interdependent, the software to operate them, and related instruction manuals containing directions concerning operation of the computer and software.

22.      *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

> a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted

from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may

depend on other information stored on the computer and the application
of knowledge about how a computer behaves. Therefore, contextual
information necessary to understand other evidence also falls within
the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of
its use, who used it, and when, sometimes it is necessary to establish
that a particular thing is not present on a storage medium.

23.    *Nature of examination.* Based on the foregoing, and consistent with Rule
41(e)(2)(B), the warrant your Affiant is applying for would permit the examination of the devices
consistent with the warrant. The examination may require authorities to employ techniques,
including but not limited to computer-assisted scans of the entire medium, that might expose many
parts of the device to human inspection in order to determine whether it is evidence described by
the warrant.

24.    Based on the foregoing information, probable cause exists to believe there is
located on, the **SUBJECT ITEMS**, evidence of violations of Title 18, United States Code, Section
2252A(a)(2)(B), Receipt of Child Pornography, Title 18, United States Code, Section
2252A(a)(5)(B), Possession of Child Pornography, Title 18 United States Code, Section 1470,
Attempted Transfer of Obscene Material to a Minor and Title 18, United States Code, Section
2251(a) and (e), Production of Child Pornography.. Your Affiant prays upon his honorable court
to issue a search warrant for the **SUBJECT ITEMS** for the items set forth in attachment "B"
(which is attached hereto and incorporated herein by reference), that constitute evidence, fruits,
and instrumentalities of violation of  Title 18, United States Code, Section 2252A(a)(2)(B),
Receipt of Child Pornography, Title 18, United States Code, Section 2252A(a)(5)(B), Possession

of Child Pornography, Title 18 United States Code 1470, Attempted Transfer of Obscene Material to a Minor and Title 18, United States Code, Section 2251(a) and (e), Production of Child Pornography.

Thomas Wooten, Task Force Officer
Homeland Security Investigations

Affidavit subscribed and sworn to before me this ____ 27th ____ day of __ May __ 2022

Christy Comstock
United States Magistrate Judge

**ATTACHMENT A**
**DESCRIPTION OF PROPERTY TO BE SEARCHED**

On April 22, 2022, the following electronic device (**SUBJECT ITEMS**) utilized by

PEARSON PATRICK were seized at 1636 Par Ln., Apartment 106, Springdale, AR 72762 by

Springdale Police Department Detective's and is currently being held at the HSI Office, located

in Fayetteville, Arkansas:

      001 –   One (1) Gray Dell Latitude 5420 Laptop, S/N-GYF7BC3
      002 –   One (1) Black Samsung Cell Phone
      003 –   One (1) Black Nintendo Switch, S/N-XAW10089917656
      004 –   One (1) Sandisk SD Flash Memory Card
      005-   One (1) Flash Memory Stick Unknown Brand
      006-   One (1) Seagate External HardDrive 2TB, S/N-NA9KLZC7
      007-   One (1) Sony Playstation 5, S/N-AJ42786916
      008-   One (1) Sandisk Micro SD card with adapter
      009-   One (1) Samsung Hardrive, S/N-S34RJ9FFA70793
      010-   One (1) Kingston USB Flash Memory Drive
      011-   One (1) Nintendo DS W/Charger & Micro SD
      012-   One (1) Asus X540L Laptop, S/N-G3N0CX10T99912A
      013-   One (1) Amazon Tablet, Model-SL056ZE
      014-   One (1) Gaomon (Digital Art Tablet), S/N-8CDC3SG01882
      015-   One (1) Sony Playstation 4
      016-   One (1) Red iPhone W/Black and Green case, IMEI: 35687211412842
      017-   One (1) Binder with assorted DVD'S for review
      018-    One (1) Samsung Galaxy Note 9, IMEI: 356569090277157 (Seized by
Springdale  detectives on April 15, 2022, following his criminal interview and arrest for
Rape and Sexual Assault 4th Degree).

## ATTACHMENT B
## ITEMS TO BE SEARCHED FOR AND SEIZED

a. Any and all images of suspected child pornography and files containing images of suspected child pornography, any and all images believed to be an attempt to produce child pornography, in any form wherever it may be stored or found including, but not limited to:

    i. originals, thumbnails, and copies of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

    ii. videos (AKA motion pictures, films, film negatives), and other recordings or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

    iii. Images self-produced of the defendant and minors, and attempts to take or produce such.

    iv. Images of children, nude or otherwise, possessed, sent, received, or via message, email, or otherwise stored on the phone.

    v. Internet history, including CACHE memory related to internet searches for child pornography or websites that could pertain such.

b. information or correspondence pertaining the sexual exploitation of children or the trade of sexual explicit images of minors, including but not limited to:

    i. correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, text messages, establishing possession, identity of individuals, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

    ii. records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

    iii. Any and all address lists, names, contact information of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256; and/or any information evidencing contact or correspondence with minors or adults in whatever form.

iv.      Any and all chat log, text messages, email, or any type of communication in any form that is related to the sexual exploitation of minors for sexual purposes or related to the production, distribution or possession of child pornography.

c.      records evidencing ownership of the subject item, including in and all lists of names, telephone numbers, addresses and contacts, and the content of voice mails and text messages and internet-based applications, and internet or purchase history revealing the user of the device.

d.      Any and all security devices, to include encryption devices, needed to gain access to the phone;

e.      Any and all address lists, names, contact information of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256; and/or any information evidencing contact or correspondence with minors or adults in whatever form.

f.      Any and all recordings, including those made by the defendant, minors, or others that depicts the defendant, or others engaging in sexually explicit conduct of any type or that depicts the defendant or others that aid in showing the ownership/use of the devices at issue.

g.      In searching the data, the computer personnel may examine and copy all of the data contained in the subject item to view their precise contents and determine whether the data falls within the items to be seized. In addition, the examining personnel may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data falls within the list of items to be seized.